| WILLIAM HOLMES<br>vs.<br>WALTER MITCHELL ET AL. | MARCH TERM, 1850. |

[INCREASE OF FEMALE SLAVES.]

A TESTATOR devised a farm "with all the rest of his negroes, stock of every description and plantation utensils, in trust," that "the *income* arising therefrom" be applied to the benefit of his uncle and aunt during their lives, and then over. HELD—That the increase of the female slaves born during the life of the uncle and aunt, did not belong to the legatees for life but pass to those entitled in remainder.

[In this case but one question was raised, and that is fully stated in the opinion of the Chancellor.]

THE CHANCELLOR:

The decision of the question raised by the pleadings in this case depends upon the construction which should be given to the will of Ignatius Semmes, deceased, or rather, to the following clause of that will, for, as it seems to me, the other parts of the will throw no light upon the subject. The clause in question is as follows: "I give and devise to Walter Mitchell, Esq., my farm called Rose Hill, together with all the rest of my negroes, stock of every description, and plantation utensils,

in trust to and for the following uses and purposes, that is to say, the income arising therefrom to be applied to the mutual benefit of my uncle William Holmes, during the life of my said uncle, and my aunt Sarah Floyd, and after the death of my said uncle, to the mutual benefit of my aunt Sarah Floyd and her children, and after the death of my aunt Sarah Floyd, to the use and benefit of the children of my said aunt Sarah Floyd, until the youngest shall arrive at the age of twenty-one years, and then I will and devise the said farm, called Rose Hill, together with the rest of the property so as aforesaid, left in trust to the children of my aunt Sarah Floyd, to them and their heirs forever."

This bill is filed by William Holmes, the uncle of the testator, to whom, together with his aunt Sarah Floyd, the income of the trust estate was given for life, and the question is, whether the issue of the female slaves comprehended in the bequest, born since the death of the testator, must be regarded as a part of the "income," and to be so applied by the trustee for the benefit of the *cestui que trusts* for life. The bill in this case claims that the trustee should be compelled by decree to transfer to the complainant the said slaves so born since the death of the testator, or such of them as the complainant is properly entitled to, and one-half of such as may be hereafter born, and that the support of the infants may be equally charged upon the income of the complainant and the said Sarah Floyd.

There can be no doubt after the numerous decisions of the highest court of this state, that the bequest for life, or for a term of years, of a female slave, or of the use of a female slave, entitles the legatee to the issue born during the existence of the life estate, or during the term, upon the principle established during the colonial government, that the issue is to be considered as a part of the use and not as an accessory to follow the right of the principal. *Scott* vs. *Dobson*, 1 *H. & McH.*, 160 ; *Somerville* vs. *Johnson*, *ib.*, 352 ; *Hamilton* vs. *Cragg*, 6 *H. & J.*, 18 ; *Sutton* vs. *Crain*, 10 *G. & J.*, 458. Many other cases could be cited to the same effect, but these are sufficient to show that the principle is too firmly settled to be shaken by any thing short of legislative authority.

No case has, however, been decided precisely like the present, and perhaps it may be said that the principle which has governed the courts in the cases in which the question has arisen does not apply to it. That principle, as shown in the opinion given by Daniel Dulaney, Esq., to the Governor acting as Chancellor, rests upon three reasons. "That the issue ought to go to the person to whom the use is limited, otherwise having no interest worth regarding, he might not take care of the issue." "That it would only be a reasonable satisfaction for the expense of maintenance and for time lost by the parent," and that. "when the use is given, a bounty at all events is intended, but. instead of a benefit, if the issue should go over, there might be a loss." These are the reasons upon which the right of the legatee has been placed, and perhaps they would not be considered applicable to a case in which the legatee is not charged with or bound to provide for the support of the issue in infancy or to take care of the parent during her pregnancy, though his. income from the trust estate might be diminished by the application of a portion of it by the trustee to those objects. In this case, and under this will, it is the duty of the trustee out of the income of the trust estate to maintain and support the issue of the female slaves during their infancy, and, therefore, there can be no actual loss to the legatee for life if the issue goes over to those who are entitled in remainder, he being under no personal obligation to support such issue, nor, for the same reason, is there any danger that the issue will suffer, because none may feel a sufficient interest to take care of them, it being, as I think, the duty of the trustee so to do, out of the profits. of the trust estate.

In this will, a mass of property, consisting of real and personal estate, is devised and bequeathed to a trustee, the income arising therefrom, to be applied for the benefit of two persons for life. The right to the possession of the property did not pass by the will, nor are any of the corresponding obligations thrown upon the legatees, which such rights of possession would impose upon them, and upon the existence of which obligations their title to the issue has been placed. They are to enjoy the income of

the trust estate and nothing more, and the question is, whether the issue of the female slaves, upon the true construction of this will, passes as a part of the income? I entertain a very strong opinion that the construction contended for by the complainant in this case would not be in accordance with the intention of the testator, and it seems to me equally clear, that it is in conflict with the principles of humanity, which, unless found in opposition to some settled rule or established legal policy, are certainly deserving of consideration.

To separate the issue from the mother, and either transfer it, as the bill prays, to the complainant, or sell it that the purchase money may be divided between the complainant and Sarah Floyd, of course involves the necessity of determining at what age this may be done. The infant cannot be torn from its mother and sold or transferred to the complainant. No one would buy, and humanity would cry out against it. There would have then to be a periodical partition, or sale, after first determining at what age the offspring could with propriety or without shocking the public sensibility, be separated from the mother. Does any one believe that the testator intended this, when he said that the "income" arising from the trust property should be applied to the mutual benefit of his uncle (the complainant) and his aunt, Sarah Floyd? I cannot think so, nor do I think that the reasons which have influenced the courts to give to the legatee for life or for a term, the after-born issue, apply to a case where a mass of property is left in trust as here.

It is clear that if the terms of the bequest in this will simply gave the right to the service and labor of the slaves, the title to the issue did not vest in the first takers, but will pass with their parents to those who are entitled in remainder upon the termination of the life estates. Such was declared to be the law by the Court of Appeals in the case of *Sutton* vs. *Crain*, before referred to. In that case it was said, that the word "use" was so qualified by its connection with the word "hire," as to give the legatee for life nothing more than a right to the service and labor of the slaves. It was remarked by the judge, who delivered the opinion of the court in that case, that but for

the association by the testator of the word "hire" with the word "use" the issue of the slaves bequeathed to the grand-children might have been sold as profits from the use, for the maintenance and education of his grand-children, which clearly was not his design, the hire or use being only appropriated to these objects. Now suppose, instead of the word "hire" being used in connection with the word "use," the testator had employed the word "income," as in this case, and had directed the "income or use" to be applied to maintain and educate his grand-children, would not the consequence have been the same? I am clearly of opinion it would, and that if the words hire or use merely give to the legatee the right to the service and labor of the slaves, the words "income or use" employed in connection can do no more, and that the word "income," standing alone, cannot give a greater right than it would give if associated with the word "use." The object we are endeavoring to arrive at is the intention of the testator, because, that, unless opposed to some inflexible rule or stern legal policy which will admit of no compromise, must regulate the decision of the cause. The word "hire," we have seen, though coupled with the word "use," will not give title to the increase of the female slaves whose hire or use is bequeathed upon the ground that so to construe the bequest would be repugnant to the design of the testator, who, when expressing his meaning in such language, must be presumed to intend to give no more than the service and labor of the slaves. But if such is the consequence of the word "hire," I am at a loss to conceive how the word "income" can have the effect contended for, since the income derivable from slaves is derived, either from their hire or service and labor when employed by the owner.

My opinon is, that when the testator directed the "income" of the estate, left in trust, to be applied to the mutual benefit of his uncle and aunt, he meant the annual income and no more. Certainly, I presume, he so intended with reference to the real estate, and it strikes me, that it would be doing great violence to his meaning, to suppose he intended that these objects of his bounty should receive more than the profits proceeding from

the hire or work and labor of the slaves, and I shall decree accordingly.

McLEAN, for Complainant.

ROBERT J. BRENT, for Defendants.

[The decision in this case was affirmed upon appeal by a divided court. See 4 *Md. Rep.*, 532.]